NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIM MARIE DAVIS<br><br>*Plaintiff,*<br><br>v.<br><br>CAROLYN W. COLVIN,<br>**Acting Commissioner of Social Security,**<br><br>*Defendant.* | Civil Action No. 15-3166<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff Kim Davis' ("Plaintiff") request for review, pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), of the Commissioner of Social Security Administration's ("Commissioner") denial of supplemental security income benefits ("SSI" or "Disability Benefits") to Plaintiff. For reasons set forth below, the Commissioner of Social Security's ("Commissioner") decision is **AFFIRMED**.

**I.     APPLICABLE LAW**

**A.  Standard of Review**

The Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court must affirm the Commissioner's decision if there exists substantial evidence to support the decision. 42 U.S.C. § 405(g); Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence, in turn, "means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). In short, substantial evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

1

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review; it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the Commissioner's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (quoting Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001)).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; and (4) the claimant's educational background, work history, and present age." Holley v. Colvin, 975 F. Supp. 2d 467, 475 (D.N.J. 2013), aff'd 590 F. App'x 167 (3d Cir. 2014).

### B. Five-Step Sequential Analysis

To determine a claimant's disability, the Commissioner must apply a five-step test. 20 C.F.R. § 404.1520(a)(4). Step one is to determine whether the claimant is currently engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as work activity, both physical and mental, that is typically performed for either profit or pay. 20 C.F.R. § 404.1572. If the claimant is found to be engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503. If it is determined that the claimant is not engaged in substantial gainful activity, the analysis moves on to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. §

2

404.1520(a)(4)(ii). The regulations provide that an impairment or combination of impairments is severe only when it places a significant limit on the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. Id.; Ortega v. Comm'r of Soc. Sec., 232 F. App'x 194, 196 (3d Cir. 2007).

At the third step, the Commissioner must determine whether there is sufficient evidence showing that the claimant suffers from a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If so, a disability is conclusively established and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner, at step four, must ask whether the claimant has a "residual functional capacity" such that he is capable of performing past relevant work; if that question is answered in the affirmative, the claim for benefits must be denied. Id. Finally, if the claimant is unable to engage in past relevant work, the Commissioner must ask, at step five, "whether work exists in significant numbers in the national economy" that the claimant is capable of performing in light of "his medical impairments, age, education, past work experience, and 'residual functional capacity.'" 20 C.F.R. §§ 404.1520(a)(4)(iii)-(v); Jones, 364 F.3d at 503. The claimant bears the burden of establishing steps one through four, while the burden of proof shifts to the Commissioner at step five. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

## II. BACKGROUND

### A. Procedural History

On July 30, 2009, Plaintiff Kim Davis filed an application for supplemental security income. The application was initially denied on January 20, 2010, and denied again on reconsideration on June 26, 2010. Tr. 68-72, Tr. 74-75. On July 20, 2010, Plaintiff filed a written request for hearings, which were held on July 26, 2011 and February 28, 2012, in Newark, New

3

Jersey. Tr. 21-63. The ALJ determined that Plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act, and Plaintiff's application for benefits was denied on March 15, 2012. Tr. 8-20. On June 19, 2014, pursuant to a District Court remand order, the Appeals Council sent the case to be heard by a new ALJ. Tr. 457-462. Plaintiff, a medical examiner, and a vocational expert testified at the new hearing on November 13, 2014. Tr 412-456. Plaintiff was represented by counsel at this time. Id. On February 23, 2015, the ALJ determined that the Plaintiff was not disabled during the relevant period. Tr. 394-411. Having exhausted her administrative remedies, Plaintiff then filed the instant action on May 5, 2015. See Compl., "ECF" No. 1.

### B. Factual Background

Plaintiff is a 53-year-old woman. She has a 10th grade education, and has no past relevant work. Tr. 404, 431. Plaintiff claims she stopped working due to a spinal disorder, left hand post trauma degenerative changes, alcoholism, and depression. Tr. 13.

On July 30, 2009, when Plaintiff was 45 years old, she filed an SSI application, alleging disability due to spinal pain, a left hand impairment, alcoholism, and depressive disorder. Tr. 13. According to Plaintiff, a car accident in April 2000 caused her severe neck and back pain. Tr. 28. Plaintiff wears a neck brace at night and has a transcutaneous electrical nerve stimulation (TENS) unit. Tr. 16. She also has a cane, which she claims was prescribed by her treating physician, Dr. Mahmood. Id. In November 2009, Dr. Weber reported x-ray evidence of lumbrosacral mild degenerative disc disease at the L4-5 level and limitation of the motion of the lumbrosacral spine as well as tenderness over the cervical and lumbar paraspinal muscles. Id. Dr. Mahmood's treatment notes do not indicate any standing or walking issues, and Dr. Weber reported that the claimant ambulated independently without an assistive device. Tr. 17. Plaintiff was prescribed

4

physical therapy as treatment for back pain in August 2008, but made only one visit in May 2009 and one visit in February 2010. Id.

Plaintiff also claimed to have left handed post traumatic degenerative changes. Tr. 13 Plaintiff is right hand dominant and experiences no limitations with that hand. Id. Dr. Weber reported that the claimant could not make a fist with her left hand, but was able to separate paper and lift a pin with difficulty. Id. X-ray results of her left hand showed previous trauma involving the fourth and fifth metacarpals and degenerative arthritis of the fourth PIP joint. Id. There is no record that Dr. Mahmood treated her left hand. Id. There is evidence of some manipulative limitations pushing and pulling, but no evidence of significant pain or other associated symptoms. Tr. 274. In November 2011, Dr. Fechner prepared an assessment of Plaintiff's physical ability to conduct work related activities, and opined that Plaintiff could engage in fine repetitive movements and gross motor movements with her left hand. Tr. 390.

Plaintiff claims to suffer from depression over the loss of custody of her son. Tr. 17. She is not under any mental health care, nor is she prescribed any psychotropic medication. Id. There is no evidence that she suffers from psychosis. Id. Plaintiff denied experiencing auditory or visual hallucinations, delusions, psychosis, or schizophrenia. Tr. 236. A mental status evaluation in November 2009 conducted by Dr. Candela found Plaintiff to be fully oriented, alert, attentive, with clear and goal-directed thoughts, average fund of knowledge, limited insight, and slow speech. Id. In December, Dr. Huber evaluated Plaintiff's mental ability to conduct work related activities, and opined that Plaintiff was markedly limited in her ability to understand, remember, and carry out detailed instructions. Tr. 260-261. Dr. Huber also noted that Plaintiff was able to follow simple instructions, sustain pace persistence, concentrate, and maintain attention, as well as adapt to work-like settings. Tr. 262.

5

Plaintiff underwent an organicity evaluation with Dr. Figurelli in September 2011. Tr. 376-379. Dr. Figurelli reported that the Plaintiff manifested no evidence of active psychotic disturbances or formal thought disorder. Tr. 377. Plaintiff was found to have intelligible speech, and no difficulty comprehending verbal interactions with the examiner. Dr. Figurelli conducted the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV) assessment, in which Plaintiff obtained a full-scale IQ score of 64, placing her within the mild mentally retarded range of intellectual functioning in her age group. Tr. 378. Dr. Figurelli diagnosed Plaintiff memory and concentration deficits consistent with low level cognitive functioning, mild mental retardation upon formal testing, lack of employability skills, and a GAF score of 50. Tr. 379.

Plaintiff has a history of alcoholism. Tr. 17. Plaintiff testified that she had been in a weekly outpatient program to treat her alcoholism from October until December of 2009. Tr. 39. Plaintiff testified that three or four months prior to her hearing she went to AA meetings four times a week. Id. In July 2011, Plaintiff testified that she had not had a drink in six months, and when examined by Dr. Figurelli in September, she reported that she uses alcohol "sometimes." Tr. 376. Plaintiff has undergone urine screens since 2009 in attempts to regain custody of her son, although she has not been successful. Tr. 42-43. Plaintiff testified that following a relapse in September 2013, she was admitted to Integrity, an inpatient facility for alcohol abuse, and was released in April 2014. Tr. 421-424.

Plaintiff relies on a family friend for support. Tr. 34. She testified that she is able to perform household chores. Tr. 181. Plaintiff is able to prepare meals for herself daily, as well as shop for groceries three to four times a week. Tr. 180-182. Plaintiff enjoys reading and doing word puzzles. Tr. 183. She spends time with friends and family a "couple times a week," and attends church "sometimes." Id.

### C. The ALJ's Decision

Following a July 26, 2011 hearing, the ALJ denied Plaintiff's SSI claims. Tr. 22, 72. In a March 15, 2011 decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 30, 2009, the benefits application date. Tr. 13. The ALJ determined that Plaintiff has the following severe impairments: spinal disorder, left hand post trauma degenerative changes, alcoholism, and depressive disorder. Id. The ALJ concluded that Plaintiff's impairments, alone or in combination, did not meet or medically equal disability. Id. The ALJ subsequently found that the Plaintiff has the Residual Functional Capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a),[1] except that she is unable to perform continual and repetitive fine fingering manipulative tasks more than one-third of the workday with her left (non-dominant) hand, and that she is able to manage gross (handling) tasks are intact with the left hand. Tr. 15. The ALJ found that her work must be limited to unskilled, one to two step instructions or tasks. Id.

The ALJ considered Plaintiff's subjective complaints in assessing her residual functional capacity, but found that her statements concerning the intensity, persistence, and limiting effects of the alleged symptoms were not entirely credible to the extent they were inconsistent with the RFC. Tr. 16. The ALJ found that Plaintiff has no past relevant work, and concluded that jobs exist in significant numbers in the national economy that Plaintiff can perform. Tr. 19. In reaching this finding, the ALJ relied on the testimony of a vocational expert. Id. Accordingly, the ALJ

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

concluded that Plaintiff was not disabled as defined by the Social Security Act, and denied Plaintiff's claim for SSI benefits. Tr. 20.

**III. ANALYSIS**

Plaintiff alleges that: (1) the Plaintiff has established disability through substantial evidence in the administrative record, Pl.'s Br. at 26-28, "ECF" No. 11; and (2) the decisional RFC is not based on substantial evidence, Pl.'s Br. at 18-26. None of these arguments prevails because the ALJ appropriately assessed Plaintiff's impairments under applicable law and the ALJ's findings are supported by substantial evidence.

**1. The Plaintiff Did Not Meet the Act's Definition of Disability During Relevant Period**

Plaintiff primarily argues that she established disability through substantial evidence in the administrative record. Pl's. Br. at 10. Plaintiff argues that the ALJ erred when he: (i) afforded less weight to the medical experts' opinions that she was disabled, Pl.'s Br. at 10-18; and (ii) disregarded Plaintiff's cognitive impairment, Pl's Br. at 15-18. The Court disagrees.

<u>i. The ALJ appropriately considered the medical experts' opinions</u>

The Plaintiff claims that the ALJ erred by crediting his lay opinion over the medical experts' opinions regarding medical equivalence and disability. Pl's. Br. at 13-15. Plaintiff argues that the examinations done by Dr. Candela and Dr. Figurelli show that the Plaintiff met or equaled a listing at § 12.05, and that the ALJ erred by rejecting the findings of those examinations. Pl's. Br. at 14. Plaintiff argues that the ALJ's conclusion that the Plaintiff's mild mental retardation did not meet 12.05[2] of the Commissioner's Listings for mental retardation was made through lay

---

[2] "Listing 12.05 is based on the three elements that characterize intellectual disorder: significantly subaverage general intellectual functioning; significant deficits in current adaptive functioning; and the disorder manifested before age 22. It also requires meeting criteria in at least one of four circumstances: (A) mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of

impression in disregard of the psychological medical experts' results, and was therefore improper. Pl's. Br. at 13. The Court disagrees.

According to the Commissioner's regulations, a statement by a medical source alleging disability or inability to work does not necessitate a determination of disability. 20 C.F.R. § 416.927(d)(1). While a medical expert's opinion is helpful in assisting the finder of fact in determining eligibility for claimants, opinions as to disability are ultimately reserved for the Commissioner. Koonce v. Apfel, 166 F.3d 1209, at *2 (4th Cir. 1999). The ALJ is not obligated to assign controlling weight to any opinion source as to the whether or not a claimant is disabled, because to do so would result in an inappropriate transfer of the Commissioner's statutorily held duty to make these determinations. Social Security Ruling (SSR) 96-5p, 61 Fed. Reg. at 34472. The treating source's opinion is only entitled to controlling weight when it is well-supported and not inconsistent with substantial evidence in the claimant's case record. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202 (3d Cir. 2008). Further, courts across the country have held the ALJ can disregard or assign less weight to testimony of a treating physician when the record contradicts that testimony. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ is able to resolve inconsistencies and ambiguities in the clinical findings and treating physicians' opinions in determining the Plaintiff's RFC and disability. Young-Schonyers v. Colvin, No. 0:13-2951, 2015 WL 1522367, at *2 (D.S.C. Mar. 31, 2015). The ALJ has the discretion to assess the validity of an

---

standardized measures of intellectual functioning is precluded; (B) a valid verbal, performance, or full scale IQ of 59 or less; (C) a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; (D) a valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following: (1) marked restriction of activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration." 20 C.F.R. pt. 404, Subpart P, App. 1, § 12.05.

IQ test result and is not required to accept it even if it is the only such result in the record. Hancock v. Astrue, 667 F.3d 470, 473-475 (4th Cir. 2012). In the presence of factors that reasonably explain a decrease in Plaintiff's previously-acquired functional abilities, such as persistent substance abuse, the ALJ is not required to accept IQ scores derived by medical examiners. Richardson v. Comm'r of SSA, 2015 WL 461660 (Feb. 4, 2015).

In the instant case, the ALJ considered the results of Dr. Figurelli's intelligence testing, and found that Plaintiff's low mental functioning had not manifested before the age of 22, as required by § 12.05. The ALJ reasoned that Plaintiff had consistently reported completing 10th grade in regular education classes and was capable of independently handling her own personal care and daily living activities. Tr. 14. Additionally, both Dr. Candela and Dr. Figurelli reported Plaintiff to have an "average fund of knowledge," with clear and goal-oriented thoughts, and to be fully alert and attentive. Tr. 236, 377. In fact, Dr. Figurelli reported that Plaintiff did not have any significant difficulty in adequately comprehending verbal interaction and verbal instruction. Tr. 18. The ALJ also found that Plaintiff's chronic history of alcoholism may have affected her functioning after the developmental period, resulting in a lower IQ score during the intelligence testing. Tr. 401. The ALJ found that these facts contradicted the medical experts' opinions that Plaintiff was disabled, and therefore appropriately afforded the opinions of the medical experts less weight.

### ii. The ALJ Reasonably Found Plaintiff Not to Meet the Act's Definition of Disability

Plaintiff alleges that substantial evidence in the record establishes that her alleged impairments meet or equal the listing requirements for disability. Pl.'s Br. at 10-18. Plaintiff argues that the ALJ erred when he failed to acknowledge Plaintiff's alleged cognitive impairments. Pl's Br. at 15-18, ECF. No. 11. The Court disagrees.

An ALJ's failure to cite specific evidence does not indicate that it was not considered. Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000). In fact, the ALJ is not required to provide a written evaluation of every piece of evidence— he is required only to minimally articulate his reasoning. Jackson v. Astrue, 2010 WL 500449, at *10 (D.S.C. Feb. 5, 2010). Ultimately, the ALJ is solely responsible for determining whether or not the claimant's alleged impairment meets or equals a listing requirement for disability. Koonce, 166 F.3d at 2. As the finder of fact, the ALJ must evaluate and determine medical opinions and resolve conflicts in the evidence. 20 C.F.R. § 416.927. It is Plaintiff's burden to prove a presumptively disabling impairment under the listings. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). To meet or equal a listing, Plaintiff is required to prove that she meets all of the specified medical criteria, not just some of the criteria. Zebley, 493 U.S. at 530. To meet the listing for cognitive disability according to 12.05, a claimant must meet not only the diagnostic criteria in the listing, but also criteria in at least one of the listing's four subsections.[3]

Plaintiff claims to have demonstrated a cognitive impairment on two separate occasions; first, during a mental status examination conducted by the Commissioner's psychologist, Dr. Candela, on November 19, 2009, and again on September 22, 2009 during another mental status examination conducted by Dr. Figurelli. Tr. 234-237, Tr. 376-380. The test results concluded that Plaintiff's full scale IQ was in the range of 64, which is evidence of mild mental retardation. Tr. 376-379. The ALJ found the results from these tests to be inconsistent with evidence of record, and determined that Plaintiff did not meet the medical listing requirements for § 12.05. According

---

[3] "Mental Retardation refers to significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period (before age 22). The required level of severity for this disorder is met when the requirements in A,B,C, or D, are satisfied." 20 C.F.R. pt. 404, Subpart P, App. 1, § 12.05.

to the ALJ, it was "clear that this level of mental functioning was not manifested during her developmental period i.e. before the age 22 as required in section 12.05." Tr. 14. Additionally, the Plaintiff reported that she has never been psychiatrically hospitalized, and that she was never in special education classes. Tr. 235, 431. The ALJ did determine that Plaintiff had a history of alcoholism, but the ALJ found no evidence of any mental health disorder related to alcoholism. Tr. 14. Further, as mentioned above, the ALJ found that Plaintiff's history of alcoholism after age 22 could have contributed to her low IQ score. Tr. 401.

The ALJ determined that Plaintiff's IQ score was inconsistent with the record and therefore invalid, and thus ruled that the Plaintiff did not meet one of the additional criteria in subsections A through D of listing § 12.05.[4] Tr. 14. The ALJ noted that Plaintiff was capable of engaging in mental activities inconsistent with the requirements of 12.05, such as concentrating, watching television, reading, doing word puzzles, and handling finances. Tr. 14, 179-172. Consequently, the ALJ found the Plaintiff to only have "moderate" difficulties in sustaining focus, attention, and concentration— not "marked" as required by the listing. Tr. 15. In light of the substantial evidence, the ALJ found that the Plaintiff failed to meet the burden of establishing that her alleged cognitive impairments met or equaled a § 12.05 listing.

### 2. The ALJ's RFC Assessment is Supported by Substantial Evidence

Plaintiff argues that the decisional RFC is not based on substantial evidence, and that the ALJ erred when he: (i) disregarded evidence of Plaintiff's alleged left-hand and cognitive impairment, Pl's Br. at 25; and (ii) failed to reflect all of the Plaintiff's alleged impairments in his hypothetical question to the vocational expert. Pl's Br. at 21-25.

<u>i. The ALJ accounted for all of Plaintiff's credibly established limitations</u>

---

[4] See <u>supra</u> note 3.

12

Plaintiff contends that the ALJ failed to properly assess her RFC because he disregarded or ignored evidence supporting of her claim for disability. Pl's Br. at 21-25. Plaintiff argues that the manipulative restrictions conveyed by the Commissioner's orthopedic consultant were ignored, that the formal testing by the Commissioner's veteran psychological examiner stating her IQ was in the "deficit functioning range" was disregarded, and that all four of the Commissioner's experts have been ignored and rejected "without a single piece of contradictory medical evidence." Pl's Br. at 25. The Court disagrees.

The ALJ evaluates the credibility of the claimant's subjective complaints and allegations of disability based on the record as a whole, including the objective medical evidence, medical source opinions, and other relevant evidence. C.F.R. § 416.929; SSR 96-97p. The ALJ may make an independent assessment of a claimant's RFC because the ALJ, not treating physicians or state consultants, must make the ultimate disability and RFC determinations. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2012). The opinion of a treating physician does not bind the ALJ on the issue of functional capacity. Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011). According to regulations, an RFC is not a medical issue, but an administrative finding. C.F.R. § 416.929. Further, where substantial evidence supports the ALJ's determination as to "moderate" limitations of concentration, persistence, or pace, the Court should defer to the findings of the ALJ. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). The fact that a Plaintiff can cite to conflicting evidence does not render the ALJ's decision erroneous. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Here, the ALJ considered all the evidence and found that the statements concerning the intensity, persistence, and limiting effects of the Plaintiff's left-hand impairment were not entirely credible to the extent that they were inconsistent with the RFC assessment. Tr. 16. Dr. Mahmood

opined that Plaintiff did not have any limitations in reaching, handling, or feeling. Tr. 274. Dr. Fechner opined that Plaintiff could occasionally reach overhead with both hands, frequently reach anywhere else with both hands, continuously handle, finger, feel, push and pull with her dominant hand, occasionally engage in fine repetitive movements with her left hand, and could frequently engage in gross motor movements with her left hand. Tr. 390. The ALJ determined that while there is evidence of weakness in her left hand, there is no evidence of significant pain or associated symptoms, and that there were no limitations in Plaintiff's dominant hand. Tr. 17. The ALJ also noted that Plaintiff was not currently receiving treatment for her left hand. Id. The ALJ did not agree with the assessment that Plaintiff has limited ability to perform handling manipulation with her non-dominant left hand but did afford substantial weight to the assessments provided by both the state agency medical consultant and Dr. Fechner, who allowed for a reduced range of light work with lifting and carrying limitations. Tr. 18. Therefore, contrary to Plaintiff's argument, the ALJ did consider opinions regarding Plaintiff's alleged left-hand impairment and reasonably concluded that the evidence regarding the impairment was not entirely credible. Id.

Additionally, as discussed above, the ALJ considered all evidence on the record regarding Plaintiff's alleged cognitive impairment and found that Plaintiff did not meet or equal the listing for disability. Tr. 18. The ALJ determined that the majority of physicians found Plaintiff capable of completing simple, routine, repetitive tasks that involve simple work-related decisions and few workplace changes. Tr. 18, 402. The ALJ discounted the intelligence testing results that indicated Plaintiff is in the mild mental retardation range and cited contradictory evidence in the record that supported this decision. Tr. 18. An ALJ is authorized to make such a determination. Astrue, 649 F.3d at 197. The ALJ found that Plaintiff's alleged cognitive impairments precluded her from

complex or detailed work instructions and tasks, but found that she was capable of unskilled, repetitive, one to two step instructions and tasks. The Court defers to the ALJ's findings.

### ii. The ALJ reasonably relied upon the question posed to the Vocational Expert

The Plaintiff contends that the ALJ failed to construct a hypothetical which reasonably conveyed the extent of Plaintiff's mental limitations, because the hypothetical posed did not include all of Plaintiff's credibly established mental limitations. Pl's Br. at 21-25. Plaintiff argues that the opinions from three psychologists and an orthopedist were improperly substituted for lay opinion and speculation. Pl's Br. at 25-26. This argument is not persuasive.

A hypothetical question is not impeachable if it adequately reflects an RFC for which the ALJ has sufficient evidence. Johnson, 434 F.3d at 659. See also Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (holding that an ALJ's hypothetical question does not need to include impairments that are not supported by the record).

In the instant case, the ALJ asked a hypothetical question that fairly set forth all of Plaintiff's credibly established limitations. Tr. 440-444. The vocational expert's response establishes considerable evidence in support of the ALJ's determination. Tr. 443-445. As discussed above, the ALJ is not required to consider evidence in the record that is not supported by the record, nor is he bound by the opinions of any consultative examiner or treating physician in making his RFC assessment. The Plaintiff had the burden to establish presumptive disability, and the ALJ found that the Plaintiff failed to meet this burden with regard to her alleged cognitive impairments. Consequently, the ALJ did not reflect evidence of those impairments in his hypothetical question to the vocational expert. Therefore, the ALJ fairly considered the substantial evidence and properly posed the hypothetical question based on that evidence.

### IV. CONCLUSION

Because the Court finds the ALJ's decision is supported by substantial evidence, the Commissioner's denial of disability benefits is **AFFIRMED.**

**Dated: November 17, 2017**

/s *Madeline Cox Arleo*
**HON. MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**